## SOUTHERN INDIANA GAS AND ELECTRIC COMPANY *v.* VAUGHN.

[No. 12,206.  Filed May 18, 1926.  Rehearing denied December 23, 1926.]

1. STREET RAILROADS.—Evidence *held* to sustain the finding of the jury that motorman of street car which struck plaintiff was guilty of negligence.  p. 519.

2. STREET RAILROADS.—Evidence *held* to justify the finding of the jury that pedestrian struck by street car was not guilty of contributory negligence.  p. 519.

3. STREET RAILROADS.—Evidence *held* sufficient to warrant the court in submitting to the jury the question of plaintiff's contributory negligence.  p. 519.

4. TRIAL.—*Refusal of instruction as to contributory negligence held proper.*—In an action against a street car company for personal injuries received while crossing one of its tracks, where the question of plaintiff's contributory negligence was for the jury, the evidence being conflicting as to whether she looked in the direction of an approaching car as she started to cross the street, the refusal of an instruction that she could not recover if she did not look for approaching cars after she left the curb, was not error.  p. 521.

5. TRIAL.—*Refusal of instruction that presence of railroad track is a warning, of danger, and that plaintiff could not recover if she could have seen car that struck her in time to have avoided injury, held not error when instructions given covered subject-matter thereof.*—In an action against a street car company for personal injuries from being struck by a car while crossing a track, the refusal of an instruction that the presence of railroad tracks is a warning of danger, and that plaintiff could not recover if she could have seen the car that struck her in time to have avoided the injury, was not error where the instructions given thoroughly covered the subject-matter thereof.  p. 522.

From Posey Circuit Court; *Herdis F. Clements,* Judge.

Action by Anna E. Vaughn against the Southern Indiana Gas and Electric Company. From a judgment for plaintiff, the defendant appeals. *Affirmed.* By the court in banc.

*Woodfin D. Robinson* and *William E. Stilwell,* for appellant.

*Frank H. Hatfield, William C. Welborn* and *Louis L. Roberts,* for appellee.

McMAHAN, J.—Appellee recovered a judgment for personal injuries occasioned by reason of being struck by one of appellant's street cars at the crossing of Fifth and Main streets in the city of Evansville. Main street runs in a northeasterly and southwesterly direction and is crossed by Fifth at right angles. Appellant operates a double track on Main, and a single track extending from Main northwest on Fifth for a short distance. On the day of the accident, appellee had been at a store on the north side of Main, about a half block east of Fifth. She left this store, walking west on the north side of Main. When she reached Fifth, she saw a traction car on Fifth immediately north of Main. She crossed Fifth in front of this car and when she reached the northwest corner of Main and Fifth, she started to cross Main, when, hearing the gong on the traction car, she looked around and saw the car coming from Fifth onto Main. She waited for it to turn the corner and pass onto Main to the west and south of her, where it stopped on the south track immediately west of Fifth.

The evidence as to how appellee was injured is conflicting. It is sufficient, however, to establish the following facts: Appellee, when she started to cross Main street, crossed the north track and waited for the traction car to pass in front of her. At this instant, one

of appellant's street cars, running west on the north track and coming from the east at a speed estimated from five to twenty miles an hour, struck and severely injured her.  She was thrown into the air several feet and landed on the pavement, as some of the witnesses said, twenty-five feet from the place where she was standing when struck.  The evidence as to whether the street car stopped before crossing Fifth is conflicting. Two of the witnesses testified that as they approached Main street from the south on Fifth, they saw the traction and the street car.  That the traction car crossed Fifth immediately in front of them; that they saw the street car approaching on the north track from the east and waited for it to pass in front of them over the intersection; that they saw appellee crossing on the west side of Fifth and saw the street car strike her.  The conductor on the traction car and a passenger on that car testified that appellee was struck by the street car just after the interurban car got started east or about. the time it had gotten across Fifth.  The motorman on the car that struck her testified that he saw appellee; that she had crossed over the north or inbound track on which he was running, and had passed in the rear of the traction car and out of his sight; that after passing in the rear of the traction car, she stepped back into the space between the two tracks and so close to the tracks on which he was running that the corner of his car struck her; that when she stepped back from behind the traction car, he was so close to her he could not avoid hitting her.  The evidence is conflicting as to the distance the street car ran after striking appellee.  There is some evidence that it ran as much as twice its length (sixty feet) after the accident.  Appellee testified that she looked to the east before starting to cross the street and did not see the car that struck her and that there was no car on the intersection of the

two streets at that time.  The motorman on the car that struck her said he stopped his car on the east side of Fifth; that he saw the traction car on the other side of Fifth; that both cars were standing still at the same time; that he saw the other car start to cross Fifth; that he went across Fifth about as fast as a man could walk. He also said:  "I saw the woman, and my car struck her just about the time that she stepped on the right hand rail of the inbound track; her face was toward the Bomm Drug Store, across Main; she walked hesitating like she was watching that Princeton traction car; she stepped up toward the back end of the car that was on the other track, which was moving at that time; she stepped behind the traction car and my car was moving at that time slowly; she stepped out of my sight; after she stepped out of sight, I thought she had gone ahead and didn't know any more until she stepped out in front of me and I applied my brakes and stopped; she stepped in front of the left hand corner of the car; I went across Fifth and up to the time she was struck, I would say five miles down to near a stop; when she stepped in front of the left hand corner of my car, she stepped back with her back to the car; I suppose the motorman on the traction car could see me and hear my gong; just as I started my car, I saw this woman in the safety zone, between these safety lines, and, about that time, I heard the gong of the Princeton car, and it started and I started toward the river going in the opposite direction; it would take the Princeton car a little longer to get under headway than my car; Mrs. Vaughn stepped behind the Princeton car just about the time I got to the safety zone."

The motorman, according to his testimony, saw appellee just as she started to cross the track on which he was running, and when his car was standing still east of Fifth.  He started his car

1-3.

just as she stepped on the right hand or north rail of the track. He saw her walking across and hesitating like she was watching the traction car. He says that when she got about on the inside rail of the inbound track, she stopped and he wondered why she did not go back to the sidewalk and wait until the other car got out of the way, and that when he got the signal from his conductor, he started and when he "got within a few feet the car hit her." Also, that when the traction car was leaving, she stepped behind it out of his sight and then stepped back so that his car hit her. Other witnesses, who were on the east side of Fifth watching for the traction car to pass in front of them, testified that the traction car had passed them before the accident and that they saw the street car strike appellee. It is quite evident that some of the witnesses were mistaken as to where the traction car was at the time of the accident. If this car had crossed Fifth before the accident, the motorman was in error when he said appellee stepped from behind that car so soon before the accident that he could not avoid striking her. With the confusion attending the movement of the two cars at this intersection, and the admitted confusion and hesitancy on the part of appellee, we are not prepared to hold that there was not sufficient evidence to sustain the jury in finding that the motorman was negligent. Indeed, appellant does not claim the evidence is not sufficient to sustain a finding that the motorman was negligent in the operation of the car. Its main contention is that appellee was guilty of negligence which proximately contributed to her injury. The jurors, however, found otherwise, and we cannot say they were not justified in so finding. Appellant calls attention to the testimony of appellee, where she said she looked the last time for a car other than the traction car just as she started across the street, and that, when she stepped

off of the curb, she looked straight ahead and went straight ahead and did not again look for any other car, and insists this shows she was guilty of negligence as a matter of law. We are of the opinion, however, that the evidence was sufficient to warrant the court in submitting the question to the jury.

Instruction No. 16a, tendered by appellant and refused was to the effect that if, after appellee stepped from the curb and started across the street, she did not look in either direction to learn if a car was approaching, but continued to look straight ahead while crossing and until she was struck, she could not recover. There is evidence that she looked. There is evidence that appellee took some precaution as she started to cross the street. She says when she started across the street, she was looking to her left, that being the direction from which the car came that struck her, and not seeing anything, she started across and then looked to see if anything was on the outbound track. The question as to whether she was negligent was for the jury. This being true, there was no error in refusing to give the tendered instruction.

Instruction No. 10, requested by appellant and which the court refused to give, is to the effect that the presence of railroad tracks is a warning of danger to any one attempting to cross them, and that it is the duty of such a person to use his eyes and ears to learn that the place is safe; that this duty must be performed at any point from which the presence of cars may be detected; and if the jury should find appellee failed to perform this duty, and by its performance she might have seen the car in time to have avoided the collision, such failure would be contributory negligence and would bar a recovery.

The Supreme Court, in *Evansville, etc., Traction Co.* v. *Williams* (1915), 183 Ind. 633, 109 N. E. 963, re-

versed the cause on account of the refusal to give a similar instruction, and appellant insists that it follows, as a matter of law, that the refusal to give its said requested instruction is reversible error. Appellee, however, calls attention to instruction No. 9, given at the request of appellant, and says it covers all the elements of the requested instruction No. 10. Instruction No. 9 was to the effect that railroad tracks are warnings of danger and that it is unsafe to cross them without the exercise of care and watchfulness in order to be made aware of the approach of cars and thus avoid a collision. That if the jury found appellee did not give any heed to her surroundings, that she took no precautions, and made no effort to learn if a car was approaching, she was guilty of negligence and could not recover. In addition to this instruction, the court gave seven other instructions defining negligence, contributory negligence, and clearly telling the jury that if appellee failed to do anything a reasonably prudent person would have done under the circumstances, and if such failure proximately contributed to her injury, she could not recover. Taking the instructions of the court as a whole, there was no reversible error in the refusal to give instruction No. 10, requested by appellant.

Instruction No. 13, tendered by appellant was covered by other instructions, so there was no error in its refusal. Instruction No. 17, requested and refused was to the effect that if the injuries to appellee were not the result of an accident which was brought about by the negligence of appellant, there could be no recovery. The jury were in a number of instructions informed there could be no recovery if the injuries to appellee were not caused by reason of the negligence of appellant. With such instructions before them, there was no error in refusing this instruction.

Complaint is made of the refusal to give other in-

structions. A careful consideration of these contentions convinces us there was no error in the action of the court.

Judgment affirmed.